THE STATE, EX REL. PRESTON, APPELLANT, *v.*
PEABODY COAL COMPANY ET AL., APPELLEES.

[Cite as State, ex rel. Preston, *v.* Peabody Coal Co. (1984),
12 Ohio St. 3d 72.]

(No. 83-605—Decided July 11, 1984.)

*Agee, Clymer & Morgan Co., L.P.A.,* and *Mr. Philip J. Fulton,* for appellant.

*Mr. Jack L. Johnson,* for appellee Peabody Coal Co.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Gerald H. Waterman,* for appellee Industrial Commission.

*Per Curiam.* R.C. 4123.61 states in pertinent part: "The average weekly wage of an * * * employee * * * at the time disability due to the occupational disease begins shall be taken as the basis upon which to compute benefits." The question presented in this appeal is whether "disability," in the case of CMP, begins when the employee quits work or when he is found to be totally disabled.

All parties concede that appellant was disabled to some degree when he quit his job. Appellant contends, however, that in the case of CMP, "disability," as used in R.C. 4123.61, can refer only to total disability, inasmuch as there are never any benefits to be computed for anything less than total disability. Appellees essentially argue that "disability" is not defined in R.C. Chapter 4123 and should be given its ordinary meaning. Disability can reasonably be said to have begun when appellant's ability declined to the point where he left his job due to his physical condition.

R.C. 4123.68 restricts benefits for CMP to claimants who are suffering total disability. That section states in pertinent part:

"Compensation and * * * expenses on account of * * * coal miners' pneumoconiosis are payable only in the event of temporary total disability, permanent total disability, or death * * *."

From this and other language in the Ohio Revised Code, it appears that the General Assembly is well able to distinguish among the various categories of disability. R.C. 4123.61 could have read, "at the time *'total* disability' or *'compensable* disability' due to the occupational disease begins." Instead, the General Assembly chose not to modify the word "disability" at all.

This court has often acknowledged that its duty is "* * *'* * * "to give effect to the *words used* [in a statute], not to delete words used *or to insert words not used.*" ' " *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69, 70. (Emphasis *sic.*) It appears, therefore, that "disability," under R.C. 4123.61, should be given its ordinary meaning.

Black's Law Dictionary (5 Ed. 1979) defines "disability" in pertinent part as follows:

"As used in connection with Workers' Compensation Acts, disability is a

composite of (1) actual incapacity to perform the tasks usually encountered in one's employment and the wage loss resulting therefrom, and (2) physical impairment of the body that may or may not be incapacitating. * * *

"* * * Inability to work * * *."

Webster's New Collegiate Dictionary (1975) defines "disability" in pertinent part as follows:

"* * * b: inability to pursue an occupation because of physical or mental impairment * * *[.]"

Both of these definitions tie disability to the inability to work. The commission, in its order, determined the date disability began according to the date appellant last worked.

Appellee-commission also notes, as did the court of appeals, that R.C. 4123.85 contains the statute of limitations for the filing of an occupational disease claim. It reads in pertinent part:

"In all cases of occupational disease, * * * *claims* for compensation or benefits *shall be forever barred unless, within two years after the disability* due to the disease *began, or* within such longer period as does not exceed *six months after diagnosis* * * * by a licensed physician * * *, *application is made* to the industrial commission or to the employer * * *." (Emphasis added.)

Appellant's cause of action arose on March 19, 1973 when he was diagnosed as having an occupational disease. As this court said in *Indus. Comm.* v. *Kamrath* (1928), 118 Ohio St. 1, 4, "[t]he statutory law in force upon the date the cause of action accrued is the measure of the right, and is not subject to enlargement or diminishment by the Industrial Commission * * *." The commission's designation of the date of disability comports with this court's determination regarding the measure of his right to benefits.

This court has consistently held that, "[t]he determination of disputed factual situations * * * is within the final jurisdiction of the Industrial Commission." *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50 [1 O.O.2d 190]. "[W]here the record contains evidence which supports the commission's factual findings, this court will not disturb that determination." *State, ex rel. General Motors Corp.,* v. *Indus. Comm.* (1975), 42 Ohio St. 2d 278, 283 [71 O.O.2d 230].

The commission found that appellant's disability due to occupational disease began on June 2, 1973, and the record shows the day prior to be his last day of work. No abuse of discretion having been shown, the commission's conclusion is a reasonable one. The judgment of the court of appeals denying the writ is therefore affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES and J. P. CELEBREZZE, JJ., concur.

C. BROWN, J., dissents.

CLIFFORD F. BROWN, J., dissenting. I am convinced that today's interpretation of R.C. 4123.61 is considerably too restrictive. I therefore dissent.

Elementary logic and common sense require that the term "disability," as used in R.C. 4123.61, be read as "total disability" in cases involving coal miners' pneumoconiosis. This is a gradually progressive disease, often taking years of exposure before reaching the point where total disability sets in, *which is the only point at which it becomes compensable.* See R.C. 4123.68(Y). Partial disability may occur years before total disability. It is manifestly unjust as well as contrary to legislative intent to measure benefits from the time mere (uncompensable) disability occurs as opposed to total (compensable) disability.

The court of appeals, in construing R.C. 4123.68(Y), which limits compensability for coal miners' pneumoconiosis to total disability or death, held that this delaying of eligibility for benefits "indicates the legislature's desire to limit when payment of benefits will begin." This interpretation, obviously correct, actually commands a result opposite to that reached by the court of appeals and affirmed today. The proper result is that benefits should be computed as of the time the claimant becomes eligible.

Not all occupational diseases are compensable only after total disability or death. See, *e.g.,* R.C. 4123.68(Z), wherein radiation illness is compensable and not limited to total disability. The same is true for berylliosis. See R.C. 4123.68(V). Thus, R.C. 4123.61 should be read in light of the fact that the term "disability" has differing significance for different occupational diseases.

The majority reasons that the language of R.C. 4123.61 should be given its "plain meaning." However, the meaning of the term "disability" in this setting is hardly as "plain" as the majority assumes it to be. The more reasonable approach would be to construe the term in light of its special significance for certain occupational diseases. Today's decision presents an extremely narrow interpretation, which is not only short-sighted but needlessly restrictive of the rights of certain claimants, contrary to the liberal construction mandate of R.C. 4123.95.

The majority cites authority for the proposition that the statutory law in effect on the date the cause of action accrues is the measure of the right. I fail to see how this principle supports today's decision. We are not addressing appellant's *right* to benefits. This right has already been established. The only issue in the case at bar is the *amount* of benefits the legislature intended to confer on claimants such as appellant. The majority today advances an unduly harsh and inflexible construction. A more logical interpretation is available in this case which would fulfill the liberal construction requirement of R.C. 4123.95 without undue distortion of legislative intent.

Based on the foregoing, I would reverse the judgment of the court of appeals and allow the writ.